Mr. Sheehan. Thank you. Good morning. Mike Sheehan. I represent Mr. Worthy in this matter. This is a Speedy Trial Act case where the district court dismissed the case for an acknowledged Speedy Trial Act violation but without prejudice and the appeal is that that dismissal should have been with prejudice. As we know, the Speedy Trial Act has a 70-day clock that can be stopped for a number of reasons, and in this case, the reason that the district court finally decided to put us over the top was the court's consideration of a plea agreement and whether that time should have counted or not. Although it's not contested by the government, this appeal does give you the opportunity to say that is the appropriate interpretation of that provision of the Speedy Trial Act, that when the judge accepts the guilty plea, any further delay while they're awaiting sentencing does not count to the co-defendants. It seems an entirely reasonable interpretation as a Fifth Circuit case that the district court relied upon that makes sense. So here, as of February… But we don't need to reach that issue. That's probably true. Okay, and you've got an abusive discretion standard of review. Correct. So… I'm sorry. The factors for the Speedy Trial Act violation are the seriousness of the offense, the circumstances of the delay, the impact on re-prosecution, the length of the delay, and prejudice to the defendant. The seriousness of the offense I submit. First, I don't dispute that this was a serious offense, but so are virtually every offense in the federal district courts. And if we were to put too much weight on that factor, it would basically erase the Speedy Trial Act because every case is serious. You could always make that argument. Therefore, any violation of the statute would be a without prejudice dismissal. The circumstances of the delay is the curious part of this case. The prosecutor returned, I should say the grand jury returned, a number of indictments for reasons that are not entirely clear. There's absolutely no evidence of bad faith here, but it's certainly a curious progression. And what I tried to point out in the brief is when they first filed the complaint and first indictment in the summer of 2010, they had all the evidence they ultimately relied upon two and a half years later at trial. So there's no obvious reason. Sometimes we know there's an emergency, we have to get the guy charged, get him locked up while we continue our investigation. There's no real evidence of that here. Some of the co-defendants did plead guilty later on, but it was all based on evidence of a two-, three-, four-year investigation that had finished as of the summer of 2010. So when you look at these series of indictments, the first one I think alleges two days, and then expands to four years, and then back to two years. It seems more of a tactical decision by the prosecutor. There was one wrinkle in there about the sentencing act, but for the most part it seemed tactical and for no purpose that we can rely on here. And so it sort of punished my client because every time there's a superseding indictment the clock starts again, again for no obvious reason. The defendants who pled guilty, were they going to be witnesses against your client? Yes, and I believe they, I can't say they all were, but if not all of them, the vast majority were testified at the trial, yes. And what's wrong with that for continuing to re-indict as they learn more? Well, four or five of them had talked to the police in cooperating before the very first indictment, and the fourth superseding indictment that was ultimately the one that was acted upon at issue here, had actually included virtually all of those that were in the very first indictment. And I guess a better way to answer your question, Judge, is if you have 15 defendants, five of them have pleaded guilty and are cooperating, all you need to do is dismiss those defendants from the indictment. It's the same case, it's the same story, it's the same set of evidence. There's no need to re-indict, simply to restart a speedy trial clock again. Did he raise this for the first time just a few days before the previous trial was to start? He had never raised a speedy trial complaint before that time, and he had asked for much of this time. Was that his request as well, as I understand it? You're largely correct, Judge. There was some litigation early about the other part of the speedy indictment part of the act, but this was the first specific articulation of a speedy trial act violation. And didn't that go into the judge's calculus in deciding that he was going to dismiss it without prejudice? It did, and I would submit that that is not a factor in the statutory analysis. It is certainly in the constitutional analysis and would certainly cut against that, but the statute lists the factors that I read to you, and of those five, I think only prejudice is a court-added one. All the others are the statutory factors, and I found nothing that said when he raised it or if he raised it is a factor that can be considered. So, yes, it's a mechanism that sort of happens in the background, and by all accounts, defense counsel saw it and saw it as an issue and started to litigate it. And so your point about did he cause the delays, well, that's the whole speedy trial act statute. Yes, he caused some of them. But if you look in deciding a speedy act trial violation, you look at all of this in making the calculus, at least the district judge usually does, as to whether there's prejudice. You look at whether it affects the defendant's ability to try the case, all these issues, and most of them I think you could fairly argue cut against your position. Well, if you take out the timeliness of assertion, that was one the judge relied on that shouldn't apply to the speedy trial act piece of it. I think the seriousness of the offense, there's a response to that would, again, an interpretation of that factor. No, that can't be right. I mean, you've essentially said any federal crime is a serious offense, but, you know, there's a difference between being a big league drug dealer and being in a national park and being caught with marijuana. That's fair, Judge, and it was an overstatement, but it is a slippery slope to get on to rely upon the seriousness as the basis for rejecting or for making it without prejudice. And there are many of these cases where that seems to be the default. It's serious, therefore we're not going to worry about it. So you're absolutely correct that there is a fair number that we could all agree are not serious, but it's a fairly small number, I submit, in the overall docket that the courts process. And just to finish the thought with what Mr. Worthy caused, some of the litigation that he was filing motions for was the speedy issues. So, in effect, he's being penalized. That time is not counting towards his speedy trial because he's trying to litigate the Speedy Trial Act. And the violation was as of February of 2012. The trial was scheduled for that July. And then another more than a 70-day clock passed again. So it was 77 days passed over. So we basically doubled the statute by the time he was about to go to trial and the judge issued the order. So this was a serious violation of the Speedy Trial Act. As to prejudice, there is not evidence of a witness gone or that kind of evidence, but the fact that my client was incarcerated is a factor the courts consider serious prejudice. He was locked up for the 24, became 27 months until trial. No further questions. Thank you. Thank you. Good morning, Your Honors. May it please the Court, Renee Bunker on behalf of the United States from the District of Maine. I'll start with the Speedy Trial Act issue as well. And as long as we are talking about numbers, let's just be clear. I think as the appellant indicated, we were talking about a 77-day violation. And albeit it's troublesome, the cases that some of the ones Barnes involved, 191 days over the 70-day limit, et cetera. And certain dates are important here because notwithstanding the emphasis on the number of indictments here, the government urged the court below, and the court indeed below, held that the last indictment to restart the 70-day clock was the second superseding indictment. That indictment issued on October 6, 2010, just two months after the defendant's arrest. That indictment added 31 counts, excuse me, eight additional defendants for a total of 14, and broadened the conspiracy from about two months to about three years. There's nothing, and kept the three drug types, heroin, cocaine, and 50 grams or more of cocaine base. There's nothing, as the Fleming Court discussed, and I think Chief Judge Felicia alluded to, there's nothing nefarious about that magnitude of superseding, the timing, et cetera. The court found consistent with precedent in this court and the Supreme Court that the clock then restarted at zero when the last defendant was arraigned. She was arrested out of state in Virginia, I think. And the court set, by the time she got there, her arraignment was November 18, 2010. And there was no objection to these calculations below. Actually, the clock didn't start then because Mr. Worthy's suppression motion was pending. And then later, Mr. Miller's psychological evaluation proceedings also had stopped the clock well into through all of June, I think, of the following year. That said, the record is clear that the third and fourth superseding indictments clearly surrounded the confusion around the Fair Sentencing Act. Judge Hornby had issued on October 27, 2010, his decision saying the date of sentencing would govern. The courts throughout the country, there were disagreements among the courts. And this court's well-reasoned Douglas opinion made clear this was not an easy issue in terms of whether under the Savings Clause and Marrero, the date of the conduct would govern versus the date of sentencing. And look at the conspiracy we have here. The prosecutor was dealing with three years of conduct predating the Fair Sentencing Act and three days of predicate acts following the August 3, 2010 enactment of the Fair Sentencing Act. So it's clear that the third and fourth superseding indictments, neither of which restarted the clock, had to do with the wonderment, albeit it was confusing, about the application or not of the Fair Sentencing Act to this case. The series of guilty pleas followed, as you indicated, Chief Judge Lynch, and after this court's Douglas opinion, the government went back to the grand jury for the fourth superseding indictment, clearly needed to add the 280-gram allegation given the litigation that had recently proceeded. And by then, 12 of the 14 defendants had pleaded guilty. The conspiracy was narrowed. The 280-gram amount was alleged, and that was on October 26, 2011. And Judge Stahl, as you indicated, yes, the defendant waited, I think, four to five days before trial, before asserting for the first time a violation of the 70-day clock and his Sixth Amendment right to trial. And that was clearly a fair, the Speedy Trial Act enumerates certain factors, among others, that are relevant and relate to those enumerated factors. So that was obviously a fair consideration for the district court in deciding whether or without prejudice dismissal was warranted here. And I believe your brother argued that while delay by the defendant is relevant to the Sixth Amendment issue, it is not under the statute itself. Is there any case law on that? With all due respect, we completely disagree. The case law suggests out of this court, I can't remember which case it is, that the other factors need to be related to that tripartite, to the enumerated factors. And clearly, I think Judge Hornby alluded to this perhaps in a footnote, had Mr. Worthy truly wanted to assert his right to a speedy trial, he could have won, moved for a severance, which didn't go necessarily to whether a violation occurred. But Judge Hornby said, I would have pressed this along had you alerted. And with all due respect, it was one of the divided decisions on whether an unsevered co-defendant's plea agreement under consideration. There was that issue as well. Mr. Worthy, this was 14 defendants, a highly litigated case, and Mr. Worthy was leading the charge in terms of motions. He filed, by my count, at least 24 before the dismissal without prejudice, another 19 or so after for a total of over 40 motions by Mr. Worthy himself. And the district court needed time, obviously, to responsibly resolve those. So certainly, the timing of not only Mr. Worthy's motion was fair consideration under both the statutory and constitutional considerations, but there were other factors here in terms of how litigious the sheer volume of motions. From the defendant's point of view, would there have been a reason not to move to sever, a tactical reason? There most certainly would be a number of tactical reasons to do that. Right. So it seems a little odd to – the footnote seems a little odd. If we're going to start imposing obligations on defendants to move to sever when it's not in their tactical advantage to do so. I don't think that's what I meant by the footnote. I meant the judge's comment that had Mr. Worthy asserted his right or told me he was interested in this PD trial, certainly would have put the parties on notice and the court seemed amenable to – I would have been pushing this along. Yes, but that's just turning the same problem around. If he'd raised a speedy trial act, I then would have considered severance when the defendant doesn't want severance. We're by no means pressing the argument that a defendant must – that came up as a separate issue on whether you can assert the 3161, the delay based on the plea agreements, which we haven't briefed that issue. I think – In your view, how long of a delay was there in his asserting the speedy trial right from when you would consider it prompt for him to have asserted it? Oh, geez. Judge Brown, I don't think – I guess I'll defer to this. I know I'm going to jump from constitutional to statutory, but I think it overlaps a little bit. The Supreme Court's discussion in Barker v. Wingo, I think, does service to that question that these issues are so fact-intensive and beg ad hoc case-by-case analysis under the totality of the circumstances. And there's certainly no way, I think, as the Supreme Court explained, to set a certain number of weeks or months or days. There are so many factors. Well, I guess from our perspective, if we were to treat his delay in asserting it as something that goes against him, I guess it would be helpful to know what would have been prompt assertion. Something short of expiration of the 70-day clock would be certainly fair from the government's point of view in terms of how far it would – But here it was with 77 days? This – he didn't move until – the court held that the clock expired February – Valentine's Day, February 12, February 14, 2012. So by then, that was the day the 70-day clock expired. Mr. Worthy moved for the first time in June – four or five days before the June 2012 trial. So it was well after the 70-day clock had run. And well after – I guess I'll leave it at that. And I guess just to – unless there are more questions on the statutory issue there, and that – I mean, Judge Hornby's decision was thoroughly analyzed, covered all of the factors. And two things that – in addition to the impact of the re-prosecution, I just want to touch on that. Here, as the court – the district court pointed out, we were ready for a trial. The court – at least in June and August 1st was the date of the court's order. Everybody pretended they were ready for trial. And so the judge aptly pointed out this isn't even a case where we're talking about retrial in terms of the impact on the act and the administration of justice. Two things at least happened thereafter, which I want to highlight with respect to just the overall record and particularly the Sixth Amendment issue. If you want to look to – for some reason, the appellant highlights that he didn't then ultimately go to trial until October 29, 2012, even after the indictment was dismissed in August. First of all, right after re-indictment, which Congress made clear we were allowed to seek re-indictment, two days afterwards the government moved for the speediest trial that the statute allows. There's that 3161C, requires without the defendant's consent to allow 30 days to elapse. Mr. Worthy objected. He told the court he had doubts about whether this case was ready for trial. He needed more time to file more motions. And he then filed more motions, some of them requesting more time. The court initially granted the government's motion set trial for September 10. Days – four days before trial, true to course, Mr. Worthy filed a motion to continue or stay trial proceedings because he wanted to focus on his getting released from bail rather than going forward with the speedy trial that he professed to want. And upon a reading of Barker and this court's other cases, on a record like that where it indicates that the defendant was not quite so interested as it may seem on the surface to proceed to trial, we submit that there was no abuse of discretion and the court should affirm. Thank you. Thank you both.